## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**IDALIA P. POTTER,**

      Plaintiff,

      **v.**                          **CASE No. 3:06-cv-758–J-16HTS**

**AIG ANNUITY INSURANCE**
**COMPANY, formerly American General**
**Annuity Insurance Company,**

      Defendant.

_____/

## O R D E R

Before the Court are Defendant's Motion to Dismiss (the "Motion")(Dkt. 3) and Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") (Dkt. 8).  For the reasons that follow, Defendant's Motion to Dismiss (Dkt. 3) is **DENIED**.

## I.      Procedural and Factual Background[1]

Plaintiff originally filed her two-count suit alleging alternative theories of negligence and breach of contract (Dkt. 2) in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County Florida, Case Number 16-2006-CA-005111-MA (the "Circuit Court Action"). (Dkt. 8, ¶ 1).  Citing diversity as grounds for jurisdiction, Defendant removed the Circuit Court Action to this Court on August 24, 2006 (Dkt. 1).

---

[1] When determining whether to grant a motion to dismiss, the Court must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the Plaintiff.  See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994).

Plaintiff alleges that on or about January 11, 2002, she purchased two annuity contracts, each in the amount of $100,000.00, underwritten and administered by Defendant.[2]  In early 2004, Plaintiff requested one loan distribution from each of the Annuity Contracts for disbursal to her sister, Ms. Deborah Cintron ("Ms. Cintron"), which requests were notarized in accordance with the written requirement contained in Defendant's application governing such distribution requests (the "Annuity Withdrawal Request").  The Annuity Withdrawal Request reads, in pertinent part, that "OWNER(S) SIGNATURE MUST BE EITHER NOTARIZED OR SIGNATURE GUARANTEED, OR THE SIGNATURE AND ADDRESS OF TWO ADULT WITNESSES MUST BE PROVIDED." (Dkt. 2, ¶ 5 n.1).

Plaintiff further alleges that shortly after the authorized distributions to Ms. Cintron, Ms. Cintron, without Plaintiff's knowledge or authority, utilized Plaintiff's personal identification data[3] and then proceeded to forge Plaintiff's signature on additional Annuity Withdrawal Requests throughout 2004 and continuing until May of 2005.  (Dkt. 2, ¶ 7).  None of the Annuity Withdrawal Requests submitted by Ms. Cintron to Defendant were notarized. (Dkt. 2, ¶¶ 6-8).

On April 19, 2005, Plaintiff claims that she alerted Defendant to Ms. Cintron's fraudulent request withdrawals; however, on May 3, 2005, Defendant processed another fraudulent Annuity Withdrawal Request submitted by Ms. Cintron.  (Dkt. 2, ¶ 10).  The total amount disbursed to Ms. Cintron from the

---

[2]  These annuity contracts, attached as Exhibit A to Docket 2, are identified as policy number FF248528 and FF258827 respectively (collectively, the "Annuity Contracts").

[3]  Plaintiff claims that Ms. Cintron "misappropriated [Plaintiff's] personal identification information, including her social security number, birth date and annuity contract numbers to change Plaintiff's address of record, as well as her phone number and password, in [Defendant's] computer system from those designated by [Plaintiff] in her Annuity Contracts . . . to a series of Post Office Boxes, phone numbers and passwords to which only Ms. Cintron had knowledge or access." (Dkt. 2, ¶ 6).

Annuity Contracts was in excess of $230,000. (Dkt. 2, ¶ 9).[4]  Plaintiff demanded that Defendant reinstate and fund the Annuity Contracts and Defendant refused.  (Dkt. 2, ¶ 12).

Upon Defendant's refusal,  Plaintiff filed her two count complaint alleging negligence and breach of contract.  Specifically, Plaintiff claims that Defendant was negligent because it "had a duty to use reasonable care in the administration of [Plaintiff's] Annuity Contracts" and it breached that duty by: 1) accepting changes to the Account Record without documentary proof that the changes were authorized; 2) processing Annuity Withdrawal Requests devoid of documentary confirmation of the requestor's identity; and, 3)  making an additional disbursement to Ms. Cintron after Plaintiff alerted Defendant to the previous fraudulent transfers.  Plaintiff further claims that Defendant breached the Annuity Contracts when it "failed to fully perform" by: 1) failing to exercise reasonable due diligence when processing the Annuity Withdrawal Requests, thereby rendering the Annuity Contracts vulnerable to theft; 2) failing to safeguard the principal of Plaintiff's premium from theft, which is implicit in the Annuity Contracts; and, 3) refusing to re-establish and refund the Annuity Contracts to remedy the damages inflicted on Plaintiff as a result of Defendant's negligence, pursuant to the Annuity Contracts' "Money Back Guarantee" provision.[5]

---

[4]  Ms. Cintron has been convicted of two counts of Grand Theft in excess of $100,000 by the Circuit Court of the Fourth Judicial Circuit of Florida, in and for Duval County, Florida, Case Number 05CF077147AD, and was ordered to pay restitution to Plaintiff in the amount $230,000.00. (Dkt. 2, ¶ 11; see also Exhibit C to Docket 2).

[5]  The Annuity Contracts contain a "Money Back Guarantee" provision, which provides that if the policy holder makes a full withdrawal at any time, he or she will at least receive all the premiums paid.  In addition, the Annuity Contracts further provide that the annuitant is also entitled to:

a)      Upon payment of the applicable premium, receive the annuity income payments due thereunder once the income plan has been established;

b)      Cancel the annuity and receive its annuity value; and,

c)      Receive a minimum of 3.5% annual interest on the annuity.

(Dkt. 2, ¶¶ 21-22).

Defendant claims that Plaintiff's suit must be dismissed because, even assuming Plaintiff's allegations are true, Defendant is not liable for any damages that Plaintiff has allegedly suffered. Specifically, Defendant claims that:

> Plaintiff's negligence claim is barred by Florida's economic loss rule . . . . [and] Plaintiff's breach of contract claim fails to identify any contractual duty owed to the Plaintiff which [Defendant] allegedly breached. Any claims to be made by Plaintiff in connection with her sister's alleged criminal acts must be asserted against her sister not against [Defendant].

(Dkt. 3 at p. 3).

## II.    Standard of Review

For Defendant to prevail on its Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, it must show beyond all doubt that Plaintiff can prove no set of facts in support of her claims that would entitle her to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Luckey v. Harris, 860 F.2d 1012, 1016 (11th Cir. 1988).

In general, courts disfavor motions to dismiss and only grant such motions in rare circumstances. See Gasper v. La. Stadium and Exposition Dist., 577 F.2d 897, 900 (5th Cir. 1978). Therefore, at the motion to dismiss stage, this Court is required to accept all of the Plaintiff's well-pleaded facts as true, and all reasonable inferences are to be construed in the light most favorable to the Plaintiff. See e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274, n.1 (11th Cir. 1999); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). Consequently, a motion to dismiss a complaint must be decided on questions of law and questions of law only. Kest v. Nathanson, 216 So.2d 233, 235 (Fla. 4th Dist. Ct. App. 1968). When faced with a motion to dismiss for failure to state a cause of action, the Court must confine itself strictly to the allegations within the four corners of the complaint. Id.

III.     **Discussion**

**Count I**

In Florida, the economic loss doctrine bars recovery of economic losses, through tort actions, for matters arising from a contract. Granat v. AXA Equitable Life Ins. Co., 2006 WL 3826785 *2 (December 27, 2006, S.D. Fla).  Stated differently, contract principles are "more appropriate than tort principles for recovering economic loss without accompanying physical injury or property damage." Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 902 (Fla. 1987)  In explaining the rationale behind the rule, the Florida Supreme Court stated:

> Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process.  A party to a contract who attempts to circumvent the contractual agreement by making a claim for economic loss in tort is, in effect, seeking to obtain a better bargain than originally made.  Thus, when the parties are in privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement.

Granat, 2006 WL at *3 (internal citations omitted).

However, in 2004, after significant expansion of the economic loss rule by Florida courts, the Florida Supreme Court "simplified" the economic loss rule in Indemnity Insur. Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004), by limiting it to situations:

> [W]here the parties are either in contractual privity or where the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies . . . . stated negatively, the economic loss rule does not apply in the services context unless a contract exists and none of the established exceptions to the rule apply.

The Florida Supreme Court explained the rational for its limitation stating, "Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited value, in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services." Id. at 542.

Established exceptions to the rule cited by Defendant in the Motion are a tort claim that is independent of or distinguishable from a purported breach of contract claim and cases "involving neglect in providing professional services." (Dkt. 3 at p. 4)  The latter exception was carved out of the economic loss rule's reach because of public policy concerns.  As the Florida Supreme Court noted in <u>Moransis v. Heathman</u>, 744 So.2d 973, 983 (Fla. 1999), "[w]hile the parties to a contract to provide a product may be able to protect themselves through contractual remedies, we do not believe the same may be necessarily true when professional services are sought and provided."

Privity of contract is not at issue in this case as neither party denies contractual privity between them.  The pertinent issue for Plaintiff is whether she can ultimately establish that this case falls under one of the exceptions to the economic loss rule, and that remains to be seen.  However, at this stage in the litigation, Defendant has not shown beyond all doubt that Plaintiff can prove no set of facts in support of her negligence claim that would entitle her to relief.

**Count II**

Defendant asks the court to dismiss Plaintiff's Breach of Contract claim because "Plaintiff has failed to allege a breach of the contractual obligation." (Dkt. 3 at p. 6).   In the Complaint, Plaintiff cites to two provisions in the Annuity Contracts.  (<u>See</u> Dkt. 2, ¶¶ 21-22).  Whether these provisions set forth actual contractual obligations, and if they do, whether they have been breached, remains to be seen.  In her Response, Plaintiff also states that in Florida, parties to a contract have "an implied duty to discharge their respective performance thereunder using reasonable care, in a skillful, diligent and competent manner, which implied contractual duty [Defendant] is clearly alleged to have breached." (Dkt. 8, ¶ 23).  Again, Defendant has not shown beyond all doubt that Plaintiff can prove no set of facts in support of her breach of contract claim that would entitle her to relief.  This is especially true in light of the fact that at issue in this case are both the Annuity Contracts and the Annuity Withdrawal Request forms, the latter of which Defendant claims are "not part of the annuity contract and therefore cannot form the basis of any

contractual duty." (Dkt. 3 at p. 6).  Before the Court can determine if a breach of contract occurred or did not occur, it must determine what the "contract" is or "contracts" are in this case.

Accordingly, upon due consideration, it is hereby **ORDERED and ADJUDGED** that Defendant's Motion to Dismiss (Dkt. 3) is **DENIED**.

**DONE AND ORDERED** in Chambers at Jacksonville, Florida this 30th day of January 2007.

JOHN H. MOORE II
United States District Judge

**Copies to:**     Counsel of Record

7